IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON M. SCHABLE,

        Plaintiff,                                              CV-06-1009-ST

      v.                                                 OPINION AND ORDER

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff Jason Schable challenges the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 USC §§ 405(g) and 1383(c). The parties consent to the jurisdiction of the Magistrate Judge to enter final orders and judgment in accordance with FRCP 73 and 28 USC § 636(c).

1 - OPINION AND ORDER

## BACKGROUND

Schable was born March 20, 1973. He earned a modified high school diploma after attending special education classes due to a specific learning disability causing difficulty in written expression and mathematics. He worked as a farm laborer, construction laborer, furniture deliverer and warehouse worker.

Schable suffered a work injury on May 13, 1996, in which he separated the acromioclavicular joint and fractured the clavicle in his right shoulder. In February 1997, he had surgery to repair the shoulder. Schable received treatment for severe headaches for several months in 1998.

Schable alleges disability beginning May 13, 1996, due to his learning disorder, shoulder impairment and headaches. He had insured status under the Social Security Act through March 31, 2003. He must establish that he was disabled on or before that date to prevail on his Title II claim. 42 USC § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F3d 599, 601 (9th Cir 1998).

## DISABILITY ANALYSIS AND ALJ'S DECISION

The burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 USC §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*,

482 US 137, 140 (1987); 20 CFR §§ 404.1520, 416.920. Schable challenges the ALJ's evaluation of the evidence and conclusion at step five of the decision-making sequence.

For the purposes of step five, the Commissioner must assess the claimant's residual functional capacity ("RFC"). This entails an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. Here the ALJ assessed Schable's RFC as the ability:

> to perform a modified range of light work . . . which does not involve repetitive or prolonged use of the right extremity for pushing or pulling activities or work overhead with the right arm. Due to mental impairments and headache pain, he is limited to simple, non-complex work which does not require math or calculation skills.

Tr. 693.[1]

An ALJ reaches step five of the decision-making sequence only after finding that the claimant has impairments which prevent him from performing his past work. At step five, the ALJ must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 US at 141-42; 20 CFR §§ 404.1520(f), 416.920(f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 US at 141-42; *Tackett v. Apfel*, 180 F3d 1094, 1100 (9th Cir 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1566, 416.966.

The ALJ relied on a vocational expert ("VE") who testified that a person with Schable's age, education, work experience and RFC would be able to perform several types of unskilled

---

[1] "Tr." refers to the official transcript of the administrative record.

3 - OPINION AND ORDER

occupations. The VE identified three examples of occupations that would be suitable for a person with Schable's vocational factors: parking lot cashier, laundry folder, and small products assembler. As a result, the ALJ concluded that Schable was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F3d 1190, 1193 (9th Cir 2004). The factual findings must be upheld if supported by inferences reasonably drawn from the record and if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Id*; *Andrews v. Shalala*, 53 F3d 1035, 1039-40 (9th Cir 1995).

## ANALYSIS

Schable challenges the ALJ's assessment of his RFC and reliance on the testimony of the VE.

### I.   RFC Assessment

Schable contends the ALJ failed to assess his RFC accurately because he did not properly evaluate Schable's subjective statements, the findings of agency reviewing physicians and the statements of lay witnesses. He also contends the ALJ failed to obtain a 2002 MRI report from Valley Lutheran Hospital in Mesa, Arizona, and failed to evaluate the evidence in compliance with SSR 96-8p.

///

### A. Schable's Credibility

Schable testified that he separated his right shoulder and fractured his collarbone while working in 1996. His shoulder was surgically repaired in 1997, but he continues to experience persistent aching and loss of movement. Tr. 41. Sometimes he experiences tingling and numbness in the right arm and hand. Tr. 47-48.

Schable testified that he can stand three to four hours at a time and walk three to four city blocks before resting. Tr. 49-50. He can sit for one to two hours at a time. Tr. 50. He has difficulty reaching forward and overhead and pushing and pulling with the right hand. *Id*. Work that requires reaching out or overhead all day long with the right hand would be difficult. Tr. 58-59. He has no limitations using his left arm and hand. *Id*.

Schable estimated that he could lift and carry 50 pounds with his left arm, but only about eight pounds with his right arm. Tr. 56. He can do light household chores, such as washing clothes, picking up the house and yard, putting wood back on the wood pile and dusting. Tr. 58-59. His right shoulder begins to bother him after driving about 50 miles because he reaches forward to steer with the right hand. Tr. 51. Schable believes his shoulder condition is worsening, but his physicians have told him it is not. Tr. 46, 718. He has not taken prescription pain medication for shoulder pain since 1997. Tr. 719.

Schable testified that he began to experience daily headaches in about 1998 which are dull and last for hours. Tr. 43-44. They cause loss of concentration and memory problems. *Id*. Schable noted that he has experienced difficulty with memory since childhood. Tr. 56. He believes he does things more slowly than in the past. Tr. 49-51.

Schable received a modified high school diploma because he attended special education classes. Tr. 46. He is not very good at adding and subtracting and cannot multiply, divide, work with fractions or decimals or make change accurately. *Id*.

The ALJ found that Schable's impairments could reasonably be expected to cause some degree of the symptoms he described. His RFC assessment incorporated many of the functional limitations Schable asserted. The ALJ restricted Schable to light work involving lifting up to 20 pounds occasionally and 10 pounds frequently. Tr. 694. He excluded all work requiring repetitive or prolonged pushing, pulling and work overhead with the right arm. *Id*. The ALJ accommodated Schable's intellectual impairments and difficulty concentrating due to headaches by restricting Schable to simple work that did not require math or calculation skills. *Id*.

While accepting much of Schable's testimony, the ALJ found his statements concerning the intensity, duration and limiting effects of the symptoms not entirely credible. Tr. 694. The ALJ discredited Schable's contention that his symptoms preclude all work and the implication that his symptoms impose limitations in addition to those in the RFC assessment.

An ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993); s*ee also Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995).

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F3d at 1284. The ALJ may also consider the claimant's

daily activities, work record and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.*  In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid.  *Id*; *see also* SSR 96-7p.

The ALJ considered appropriate factors in evaluating Schable's credibility.  He explained that the objective medical evidence and treatment history did not fully support debilitating limitations.

In anticipation of shoulder surgery in February 1997, Scott Jones, MD, opined that the normal course of recovery would permit Schable to return to light duty after two weeks and full duty after six to eight weeks.  Tr. 594.  Schable's post-surgery recovery was generally consistent with Dr. Jones' prognosis.  In March 1997 Schable was cleared to start exercising his right arm and in April, Dr. Staver cleared him to engage in light activities except overhead use of the right arm.  He could lift up to 25 pounds with his arm at his side.  Tr. 622.  In July 1997, Dr. Staver found Schable medically stationary with some limitations in range of motion in the right shoulder.  Tr. 620.  He opined that Schable had permanent restrictions of:

> no repetitive overhead use of his right arm and shoulder.  No continuous strenuous pushing, pulling.  Lifting and carrying, I believe, are in the medium category.

*Id*.

Dr. Staver saw Schable in March 2005 for the first time in over seven years.  Tr. 856.  On physical examination, Dr. Staver found no muscle atrophy in either shoulder and Schable's muscle

7 - OPINION AND ORDER

tone and calluses were equal bilaterally. Tr. 857. Dr. Staver was unable to elicit reproducible signs due to pain behavior, give way weakness and other inconsistencies. *Id*.

Schable reported that he had re-injured his shoulder and fractured a vertebra in a motor vehicle accident in November 2002 in Mesa, Arizona. *Id*. Dr. Staver ordered x-ray studies of the shoulder which showed no significant changes since 1997 and no complications resulting from the 2002 motor vehicle accident. *Id*. Schable testified that Dr. Staver did not believe him when he reported worsening shoulder symptoms. Tr. 718.

Contemporaneous treatment records from the 2002 motor vehicle accident are inconsistent with Schable's report of a fractured vertebra and exacerbation of the earlier shoulder injury. X-rays showed no signs of acute fractures or dislocations and his back pain appeared to be musculoskeletal. Tr. 1066, 1069-71, 1075. He had somewhat limited range of motion in the right shoulder, consistent with the permanent limitations found earlier by Dr. Staver. Tr. 1070.

Andre Matthews, MD, who treated Schable at Valley Lutheran Hospital in Mesa, Arizona, ordered a bone scan to rule out trauma in the thoracolumbar region of the spine. Tr. 1082. Contrary to Schable's report to Dr. Staver in 2005, the bone scan results were normal without any suggestion of an acute vertebral fracture. Tr. 1086.

The ALJ noted that Schable did not require treatment for his shoulder during the seven-year hiatus from Dr. Staver, other than the urgent care associated with the motor vehicle accident in 2002. He did not require pain medication after 1997. The ALJ could reasonably conclude that the long absence from treatment is inconsistent with ongoing debilitating symptoms.

Similarly, the ALJ pointed out that the treatment record did not support Schable's assertion of daily severe headaches beginning in September 1997. Schable only complained of headaches to

8 - OPINION AND ORDER

healthcare providers for a few months between March and July 1998. Tr. 608, 628-29, 634. In July 1998, Emily Moser, MD, strongly suspected he was not compliant with the medications she prescribed for headaches. Tr. 627, 633. In addition, the record does not include evidence of a specific functional limitation attributable to headaches. The ALJ could reasonably conclude that if Schable were experiencing daily debilitating headaches, more frequent reports would appear in the record and Schable would comply with recommended treatment or seek a different treatment, if the offered medication was ineffective.

The ALJ found that mental health records did not support Schable's assertion that he has disabling intellectual, educational or psychological deficits. School testing showed that, despite his learning disability, Schable has average intelligence. Tr. 269, 302-03, 496-97. He has not sought or received mental health treatment outside the individualized education program he had in school. Gary Sacks, Ph.D., examined Schable and diagnosed dysthymia and a learning disability. Tr. 613-17. Based on his work history, Dr. Sacks found that Schable was capable of performing simple job demands. Tr. 616.

The ALJ found Schable's work history inconsistent with the claim that his limitations precluded all work. Schable described working at strenuous manual labor occupations from 1997 through 2002, including farm labor, construction work, unloading trucks, mill work and groundskeeping. Tr. 856, 715-17. The ALJ acknowledged that Schable did not perform this work at a level consistent with substantial gainful activity. The work exceeded Schable's RFC, however, and the ALJ concluded that Schable's ability to do such strenuous work for extended periods suggests that he could be employed in lighter work consistent with his RFC.

Schable's work history also shows that his lifelong intellectual deficits do not preclude simple work. He was able to engage in simple, unskilled occupations until he injured his shoulder.

Finally, Schable acknowledged engaging in generally normal daily activities, consistent with the ability to perform light work activity. He admitted that he should not have a problem in work requiring the manufacture of light items, placing them in a box and stacking the boxes if they are not heavy. Tr. 43.

In summary, the following support the ALJ's conclusion that Schable's assertion of limitations in excess of his RFC assessment are not credible: objective findings, Dr. Staver's opinion of Schable's physical limitations, the long periods during which Schable did not require treatment, the inconsistencies Dr. Staver found in his 2005 examination, Schable's apparent misunderstanding of his injuries from the 2002 motor vehicle accident, his demonstrated ability to work despite his learning disability and his ability to perform generally normal activities after his alleged onset date. This evidence provides a clear and convincing basis for the ALJ to discredit Schable's claim that he is incapable of performing any work. The ALJ's findings are sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit Schable's allegations.

### B.   Reviewing Physicians' Opinions

Schable contends the ALJ failed to give sufficient weight to the opinions of agency reviewing physicians. The Commissioner relies on medical and psychological consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 CFR §§ 404.1527(f), 416.927(f); SSR 96-6p. Such reviewing sources do not treat or examine the claimant. Therefore, their opinions are held to stricter standards and are

given weight only to the extent they are supported by the record and consistent with the record as a whole. SSR 96-6p. The ALJ is not bound by the findings of reviewing consultants, but may not ignore their opinions and must explain the weight given to the opinions in their decision. *Id.*

Here the ALJ considered the opinion of Howard Johnson, MD, and Martin Kehrli, MD, regarding Schable's physical limitations. They opined that Schable remained capable of a modified range of medium work. Tr. 649, 653-55. The ALJ chose not to adopt that finding. Instead, he gave Schable the benefit of the doubt with respect to the assertion that he experiences pain when lifting heavy objects and found that he could do no more than light work. Tr. 696.

The ALJ also considered the opinion of reviewing psychological consultants Dick Wimmers, PhD, and Bill Hennings, PhD, regarding Schable's mental impairments. They opined that Schable remains capable of following simple instructions and learning and performing simple procedures. Tr. 646. The ALJ adopted this opinion. Tr. 696.

Drs. Wimmers and Hennings opined that Schable should not be expected to deal with the public or interact frequently with others "due to depression and social style." Tr. 646. The ALJ considered this opinion and chose to give it little weight. The ALJ explained that the record did not support significant limitations in work-related social functioning. Tr. 696. The ALJ pointed out that Schable had worked in the past and for extended periods after his alleged onset of disability without any indication of limitations in work-related social function. Schable testified that he sometimes does not like to be around people, but never lost a job due to difficulties interacting with others. Tr. 721-22. Schable's mother provided a written statement indicating that Schable has no limitations in social functioning. Tr. 931.

The ALJ did not ignore the opinions of the reviewing medical and psychological consultants. He considered their opinions and gave them weight to the extent they were supported by the record and consistent with the record as a whole. He explained why he departed from their opinions and his explanation is supported by inferences that can reasonably be drawn from the record.

Under these circumstances, the ALJ's factual findings cannot be disturbed even if evidence exists to support more than one rational interpretation of the evidence. *Andrews,* 53 F3d at 1039; *Batson*, 359 F3d at 1193.

### C. Lay Witness Statements

Schable contends the ALJ failed to properly evaluate the written statements of his mother, Susan Schable, and the testimony of his sister-in-law, Erin Schable. Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill,* 12 F3d at 918. Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996). To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. *Id.*

Susan Schable provided a written statement dated November 12, 1999. Tr. 550-52. She indicated that since the accident of May 1996, Schable always appeared to be in some degree of pain, is unable to do any kind of manual labor, naps frequently during the day and has difficulty sleeping at night. *Id.*

On July 11, 2005, Susan Schable completed a form worksheet indicating that Schable has extremely limited use of the right arm and shoulder. Tr. 930-37. She opined that Schable could not lift 10 to 25 pounds. Tr. 931. She said that Schable had frequent headaches that incapacitate him for at least eight to 12 hours at a time. *Id.* His pace is so slow that it takes him an hour to do a five

12 - OPINION AND ORDER

-minute task using his left hand. Tr. 932. He is more irritable and cranky than before, but he has no social problems. Tr. 931, 935.

At the hearing on July 12, 2005, Erin Schable testified that Schable has trouble walking and has a noticeable limp. Tr. 708-09. He appeared to be in pain at least 75% of the time. Tr. 709. Regular household chores appeared to wear him out. *Id*. He would stop to rest after about 10 minutes of normal household activity. Tr. 710. When performing activities that resemble work, he does things about 50% slower than normal. *Id*. He has frequent headaches that last from 30 minutes to several hours. *Id*. He reads magazines. *Id*.

The ALJ gave these reports little weight for the same reasons he discredited Schable's subjective allegations. He noted that Schable was able to perform significant work activity in manual labor jobs from 1997 to 2001. Tr. 696. He found the lay witness statements inconsistent with the objective medical evidence which showed no worsening of the shoulder after surgery in 1997, no complaints of headaches after 1998 and no findings supporting limitations in walking. *Id*.

The lay witness statements were inconsistent with the treatment record which showed long periods without treatment of the shoulder and only a brief period of treatments for headaches. In addition, they were inconsistent with the opinions of treating and examining physicians. Dr. Sacks opined that Schable's work history showed the ability to carry out simple work demands and Dr. Staver opined that he could perform lifting and carrying in the medium range, with appropriate limitations on the use of the right arm.

The ALJ's decisions shows that he did not disregard the lay witness statements without comment. His reasons for discounting the lay witness reports were germane to the issue of the credibility of those reports. Accordingly, his conclusions will not be disturbed.

### D.   Development of the Record

Schable contends the ALJ failed to develop the record because he did not obtain an MRI study allegedly performed at Valley Lutheran Hospital in Mesa, Arizona following a motor vehicle accident in November 2002.

The ALJ has a duty to fully and fairly develop the record and to assure that the claimant's interests are considered. *Brown v. Heckler*, 713 F2d 441, 443 (9th Cir 1983). The claimant must bring to the Commissioner's attention the medical evidence that shows disability. *Mayes v. Massanari*, 276 F3d 453, 459 (9th Cir 2001); 20 CFR §§ 404.1512, 416.912.

Schable testified that Dr. Andre Matthews ordered an MRI of the right shoulder which was then performed at Valley Lutheran Hospital in Mesa, Arizona, and showed bursitis, arthritis and a black mass in the shoulder. Tr. 724. In March 2005, Schable described this to Dr. Staver. Tr. 856. He said Dr. Matthews obtained x-ray studies and an MRI scan of the right shoulder, to be sure there was not a rotator cuff tear. *Id*. Schable did not mention findings of bursitis, arthritis and so forth when he described the MRI scan to Dr. Staver.

The ALJ requested Schable's medical records from Valley Lutheran Hospital and Dr. Matthews. Tr. 730-31, 1169. He entered into the case record the documents he obtained, including over 200 pages of medical reports covering the period from October 2002 through February 2003. Tr. 938-1168.

The medical reports reflect Schable's emergency and follow-up treatment after his motor vehicle accident and numerous records that have no bearing on the present case. The emergency department reports related to the car accident do not include any reference to an MRI of the

shoulder. Tr. 1066-79. A radiology report indicated that x-rays showed a "normal right shoulder" with no evidence of fracture, dislocation or bone, soft tissue or joint pathology. Tr. 1075.

The records from Dr. Matthews's follow-up treatment also contain no reference to an MRI of the right shoulder. Dr. Matthews ordered a bone scan to determine whether Schable's complaints of back pain could be related to a vertebral fracture. Tr. 1082. The bone scan showed no evidence to suggest an acute fracture. Tr. 1086.

The ALJ requested the medical records Schable identified and obtained what appears to be a complete set of those records. There is no indication in them that the MRI Schable reported ever occurred. The x-ray study of Schable's right shoulder contradicts his description of the absent MRI results. The ALJ could reasonably conclude that he obtained all the records available from Valley Lutheran Hospital and Dr. Matthews. Under these circumstances, he had no duty to seek additional evidence from them. *Mayes*, 276 F3d at 459-60; *Lewis v. Apfel*, 236 F3d 503, 514-15 (9th Cir 2001).

### E.    SSR 96-8p

Schable contends the ALJ did not address whether he could work on a regular and continuing basis, failed to consider all of his impairments and improperly evaluated the limitations found by the agency reviewing physicians.

The ALJ's decision reflects that he considered all the evidence of functional limitations and incorporated into his RFC assessment those functional limitations that were reasonably supported by the record. In doing so, the ALJ complied with the requirements of SSR 96-8p.

## II.    Vocational Evidence

At step five of the decision-making sequence, the Commissioner must show that jobs exist in the national economy that are within the claimant's RFC. *Andrews*, 53 F3d at 1043. The

Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.* The assumptions in the hypothetical question must be supported by substantial evidence. *Id.*

Schable challenges the ALJ's step-five determination on four grounds. First, he challenges the hypothetical question used by the ALJ to elicit testimony from the VE. Second, he contends jobs identified by the VE exceed the limitations in the ALJ's RFC assessment. Third, he argues that the VE's testimony as to the number of jobs available in the national economy lacked adequate foundation. Fourth, Schable contends the ALJ ignored letters from certain agencies indicating that they do not compile or publish data on the number of jobs available in the occupation codes listed in the Dictionary of Occupational Titles ("DOT").

### A. Hypothetical Question

Schable contends the ALJ elicited vocational testimony with a hypothetical question based on an invalid RFC assessment. The ALJ considered all the evidence and posed his vocational hypothetical question based on the limitations supported by the record as a whole. Because the ALJ did not find the additional limitations asserted by Schable supported by the record, it was not error for him to exclude them from his hypothetical question. *Magallanes v. Bowen*, 881 F2d 747, 756-57 (9th Cir 1989).

### B. DOT Job Descriptions

Schable next contends that the jobs identified by the VE exceeded his abilities and the restriction in the ALJ's RFC assessment to "simple, non-complex work which does not require math or calculation skills." Tr. 693. Schable asserts that the DOT job descriptions require an understanding of basic arithmetic operations. The ALJ inquired whether the jobs could be

performed by a worker who was unable do the calculations himself, but who could use a calculator. The VE testified that such a worker could perform these jobs. Tr. 728. Accordingly, Schable's argument that the DOT job descriptions require abilities beyond the restrictions in the ALJ's RFC assessment cannot be sustained.

### C. Foundation

The VE identified occupations that a person with Schable's vocational factors of age, education, work experience and RFC could perform. The VE estimated how many jobs exist in the national economy for each occupation. Tr. 727.

Schable contends this testimony lacked foundation and should be disregarded under *Daubert v. Merrell Dow Pharm., Inc.*, 509 US 579, 598 (1993). In *Daubert*, the Supreme Court ruled on the prerequisites for admissibility in federal trials of purported scientific evidence under Rule 702 of the Federal Rules of Evidence. *Id.* Under Rule 702, a district court judge must ensure that a purported expert's opinion rests on a reliable foundation and is relevant. *Id.* Schable contends the VE's testimony regarding the number of jobs in each occupation is inadmissible because the ALJ did not ensure that it was based on a reliable foundation.

This argument cannot be sustained because *Daubert* and Rule 702 have no application in the context of administrative hearings before an ALJ. An ALJ may receive evidence at such hearings even though the evidence would not be admissible in court under the rules of evidence used by the court. 20 CFR §§ 404.950(c), 416.1450(c). The VE's expertise provides the necessary foundation and no additional foundation is necessary. *Bayliss v. Barnhart*, 427 F3d 1211, 1218 n. 4 (9th Cir 2005). Although Schable argues at length that *Bayliss* was incorrectly decided, he fails to offer any grounds by which he can avoid its holding.

Schable's attorney had ample opportunity to examine the VE regarding his qualifications and the basis of his testimony, but did not object to the VE's qualifications or question the foundation or reasoning of his testimony. He chose not to ask the VE to describe the sources he consulted in estimating the number of jobs existing in each occupation he identified. This is not an error that can now be attributed to the ALJ.

### D.   Documentation from Agencies

Before the hearing, Schable submitted letters indicating that the US Department of Labor Bureau of Labor Statistics, the Occupational Employment Statistics unit of the Oregon Employment Department and the Census Bureau of the US Department of Commerce do not compile or publish data on the numbers of jobs in the state or national economy by DOT occupation codes. Tr. 905-09.

Schable's argument that the ALJ erred by failing to address this evidence cannot be sustained. Whether the three agencies have data regarding job numbers is not an issue in this case. The letters do not establish that the VE lacked a basis for his opinion at the hearing. The VE could form such an opinion from any of the bases of his expertise, including other published sources, education, personal research, experience and presumably many others. Schable's attorney failed to question the VE's expertise or the basis of his opinion and cannot now attribute that error to the ALJ.

///

///

///

///

///

///

# ORDER

Based on the foregoing, the ALJ's determination that Schable does not suffer from a disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and this case is DISMISSED.

DATED this 30th day of August, 2007.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge